ELTON HOYT, 2ND, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62905, 64691, 64710–64712, 70951–70954.

Promulgated September 29, 1936.

John B. Putnam, Esq., for the petitioners.
P. A. Bayer, Esq., for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: H. G. Dalton; H. G. Dalton, W. G. Mather and S. L. Mather, Executors, Estate of Samuel Mather; S. E. Bool; William McLauchlan, II, S. E. Bool, J. B. Putnam, Executors, Estate of William McLauchlan.

OPINION.

MELLOTT: In these proceedings which were consolidated for hearing and determination, petitioners contest the following deficiencies in income taxes determined by the respondent:

| Docket No. | Name | Year | Deficiency |
|---|---|---|---|
| 64710 | Elton Hoyt, 2nd | 1929 | $1,081.68 |
| 64711 | H. G. Dalton | 1929 | 3,499.66 |
| 64712 | Estate of Samuel Mather | 1929 | 2,844.04 |
| 64691 | S. E. Bool | 1929 | 1,123.59 |
| 62905 | Estate of Wm. McLauchlan | 1929 | 1,543.49 |
| 70951 | S. E. Bool | 1930 | 732.04 |
| 70952 | Estate of Wm. McLauchlan | 1930 | 1,463.84 |
| 70953 | H. G. Dalton | 1930 | 848.67 |
| 70954 | Elton Hoyt, 2nd | 1930 | 207.26 |

The sole issue presented for our determination is what part, if any, of the distributions received by the petitioners from the Hemlock River Mining Co. during the years 1929 and 1930, is taxable as dividends received. The facts, all of which were stipulated, may be briefly summarized.

The Hemlock River Mining Co. had outstanding on March 1, 1913, 20,000 shares of common stock of a par value of $25 per share on which $9.50 per share, or a total of $193,000, had been paid in by its stockholders. The balance of the subscription price, to wit, $15.50 per share, had not been called at that time. The company called the balance of the subscription to its capital stock, $15.50 per share, in the year 1925, and during the latter months of that year and the early months of 1926, the full amount aggregating $310,000 was paid in by the stockholders, making a total of $500,000 of paid-in capital.

On March 1, 1913, the corporation had $122,379.39 accumulated earned surplus in excess of its then paid-in capital of $190,000. Its net income for the last ten months of 1913, and its net income or loss for each of the calendar years thereafter, to and including 1930, computed by including nontaxable income and deducting Federal taxes and other unallowable expenditures, and without reference to any deduction for depletion of discovery or other valuation of mines, and its surplus or capital deficit at the beginning of each year are as shown in the following table:

| | Income or loss in year without reference to depletion | Surplus or capital deficit at beginning of year | | Income or loss in year without reference to depletion | Surplus or capital deficit at beginning of year |
|---|---|---|---|---|---|
| March 1, 1913 | | +$122,679.39 | 1922 | −$24,243.78 | −$33,859.72 |
| 3/1/13 to 12/31/13 | +$12,889.96 | | 1923 | −32,217.66 | −58,103.50 |
| 1914 | −63,004.37 | +$135,569.35 | 1924 | −98,165.79 | −90,321.16 |
| 1915 | −3,562.37 | +72,564.98 | 1925 | | −188,485.95 |
| 1916 | −14,663.17 | +69,002.61 | 1926 | +14,665.92 | −188,485.95 |
| 1917 | +46,793.43 | +54,339.44 | 1927 | +26,775.29 | −173,820.03 |
| 1918 | +26,587.35 | +101,132.87 | 1928 | +77,735.50 | −147,044.74 |
| 1919 | +8,601.72 | +127,720.22 | 1929 | +147,880.44 | −69,309.24 |
| 1920 | −20,773.38 | +136,321.94 | 1930 | +160,581.75 | |
| 1921 | −149,408.28 | +115,548.56 | | | |

In 1933 the respondent found that the Hemlock River Mining Co. had discovered its Warner mine in 1921, and determined that the fair market value (in excess of cost, if any) of the company's interest in this mine as of the date of discovery, or within 30 days thereafter, and for the purposes of determining discovery depletion allowance as provided in section 114 (b) (2) of the Revenue Act of 1928, and similar provisions of prior revenue acts was $501,572. The estimated tonnage on which this valuation was based was 1,253,930 tons, resulting in a per ton value of 40 cents.

The tonnage of ore shipped from the Warner mine in each year from 1921 to 1930, inclusive, and the result of multiplying such tonnage for each year by 40 cents, are shown in columns I and II of the schedule set out below. In column III of the schedule are shown the amounts allowable as deductions for depletion based upon the discovery value of the Warner mine, computed in accordance with the provisions of the revenue acts in effect for said years:

| Year | Column I Tons mined | Column II Depletion sustained | Column III Depletion allowed |
|---|---|---|---|
| 1921 | 1,825 | $730.00 | None |
| 1922 | 63,152 | 25,260.80 | None |
| 1923 | 58,917 | 23,566.80 | $14,240.24 |
| 1924 | 80,064 | 32,025.60 | None |
| 1925 | 143,973 | 57,589.20 | 36,936.27 |
| 1926 | 161,688 | 64,675.20 | 33,509.84 |
| 1927 | 118,110 | 47,244.00 | 25,848.37 |
| 1928 | 155,441 | 62,176.40 | 41,653.88 |
| 1929 | 171,656 | 68,662.40 | 68,662.40 |
| 1930 | 168,307 | 67,322.80 | 67,322.80 |

The Hemlock River Mining Co. made no distributions to its stockholders, as dividends or otherwise, after March 1, 1913, until December 31, 1929. On that date it distributed $200,000, or $10 per share on each outstanding share of capital stock. On December 24, 1930, it distributed $120,000, or $6 per share on each outstanding share of its capital stock. The issue before us is the treatment to be accorded the amounts received by these petitioners, as stockholders, through such distributions. In their income tax returns for the years 1929 and 1930 they reported no part of such distributions as taxable dividends.

The number of shares owned by the petitioners, and the amounts received, are as follows:

| Petitioner | Shares owned | Received Dec. 31, 1929 | Received Dec. 24, 1930 |
|---|---|---|---|
| H. G. Dalton | 650 | $6,500 | $3,900 |
| Elton Hoyt, 2nd | 230 | 2,300 | 1,380 |
| S. E. Bool | 1,065 | 10,650 | 6,390 |
| William McLauchlan | 1,900 | 19,000 | 11,400 |
| Samuel Mather | 1,100 | 11,000 | 6,600 |

During the years 1929 and 1930 the basis of all stock of the Hemlock River Mining Co. owned by petitioners was in excess of $16 per share.

The respondent computed the results of the operation of the Hemlock River Mining Co. from 1913 to 1929, inclusive, as follows:

| | |
|---|---:|
| Earned Surplus March 1, 1913 | $122,679.39 |
| Earned Surplus from Discovery in 1921 | 501,572.00 |
| Total | $624,251.39 |
| Net Losses 1913–1927, inclusive, (before Depletion) $269,724.13 | |
| Depletion sustained 251,091.60 | |
| | 520,815.73 |
| Balance earned surplus as at December 31, 1927 | 103,435.66 |
| 1928 Net Income (Before Depletion) 77,735.50 | |
| 1928 Depletion sustained 62,176.40 | |
| 1928 Earnings available for dividends | 15,559.10 |
| 1929 Net Income (Before Depletion) 147,880.44 | |
| 1929 Depletion sustained 68,662.40 | |
| 1929 Earnings available for dividends | 79,218.04 |
| Total 1928 and 1929 Earnings available for dividends | 94,777.14 |

Based upon the above computation the respondent determined that $94,777.14, or 47.3885 percent of the distribution of $200,000 paid by the company on December 31, 1929, represented taxable dividends in the hands of the stockholders. He also determined that the company had net earnings or profits before depletion of $160,581.75 for the year 1930, and in that year sustained depletion based on discovery value of $67,322.80, which left available earnings of $93,258.95 for the entire year; that $91,214.91 of the $93,258.95 was available on December 24, 1930, when the distribution of $120,000 was made; and that 76.0125 per cent of the distribution represented taxable dividends when received by the stockholders.

The petitioners compute the results of the operations of the Hemlock River Mining Co. from 1913 to 1930, inclusive, as follows:

| | Surplus or capital deficit at beginning of year | Income or loss in year before depletion | Allowable depletion Warner Mine | Surplus or capital deficit at end of year | Warner Mine depletion reserve end of year |
|---|---:|---:|---:|---:|---:|
| Mar. 1, 1913 | +$122,679.39 | | | | |
| 3/1/13 to 12/31/13 | | +$12,889.96 | | +$135,569.35 | |
| 1914 | +135,569.35 | −63,004.37 | | +72,564.98 | |
| 1915 | +72,564.98 | −3,562.37 | | +69,002.61 | |
| 1916 | +69,002.61 | −14,663.17 | | +54,339.44 | |
| 1917 | +54,339.44 | +46,793.43 | | +101,132.87 | |
| 1918 | +101,132.87 | +26,587.35 | | +127,720.22 | |
| 1919 | +127,720.22 | +8,601.72 | | +136,321.94 | |
| 1920 | +136,321.94 | −20,773.38 | | +115,548.56 | |
| 1921 | +115,548.56 | −149,408.28 | | −33,859.72 | |
| 1922 | −33,859.72 | −24,243.78 | | −58,103.50 | |
| 1923 | −58,103.50 | −32,217.66 | $14,240.24 | −104,561.40 | $14,240.24 |
| 1924 | −104,561.40 | −98,164.79 | | −202,726.19 | 14,240.24 |
| 1925 | −202,726.19 | | 36,936.27 | −239,662.46 | 51,176.51 |
| 1926 | −239,662.46 | +14,665.92 | 33,509.84 | −258,506.38 | 84,686.35 |
| 1927 | −258,506.38 | +26,775.29 | 25,848.37 | −257,579.46 | 110,534.72 |
| 1928 | −257,579.46 | +77,735.50 | 41,653.88 | −221,497.84 | 152,188.60 |
| 1929 | −221,497.84 | +147,880.44 | 68,662.40 | −142,279.80 | 220,851.00 |
| 1930 | −142,279.80 | +160,581.75 | 67,322.80 | −49,020.85 | 288,173.80 |

The petitioners contend that neither at the time of the distribution in 1929, nor at the time of the distribution in 1930, did the Hemlock River Mining Co. have any accumulated earnings or surplus from which dividends could be declared; that the distributions made must have been and were from accumulated discovery depletion reserve funds and from capital; and that inasmuch as the stipulated tax basis of the stock of each taxpayer at the time of the receipt of such distributions exceeded the total of all distributions, no taxable income is chargeable to the taxpayers on account of such distributions.

The pertinent provisions of the Revenue Act of 1928 are shown in the margin.[2] ,

Whether or not any part of the distributions received by petitioners represented taxable dividends depends upon whether the Hemlock River Mining Co. had, at the time such distributions were made, any earnings and profits accumulated after February 28, 1913. This can be ascertained only by determining two questions, namely (1) the treatment which must be accorded the discovery value allowed to the corporation for the purpose of depletion; and (2) the treatment which must be accorded the earnings, which the petitioners contend were in a depletion reserve based upon the discovery value of the Warner mine, at the time the distributions were made.

The respondent has treated the discovery value as earned surplus, and argues that it represents the basis upon which the allowances for depletion are based; that it is a recognized asset of the corporation which should be set up on its books; and that without this asset there is nothing against which to allow depletion.

As a general rule the basis used for depletion is the same as the basis used for computing gain or loss upon the sale of property. Depletion based upon discovery value is, however, an exception to

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) *Source of distributions.*—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 113.

\*  \*  \*  \*  \*  \*  \*

(d) *Other distributions from capital.*—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines.

this general rule. The discovery depletion provision first appeared in the Revenue Act of 1918. It was enacted to stimulate prospecting and exploration. Congress deliberately gave to taxpayers discovering mineral properties, if such discoveries increased the value of their holdings to an extent materially disproportionate to cost, the right to receive a portion of the increased value free of tax. *Melville G. Thompson*, 10 B. T. A. 25. The taxpayer making the discovery was permitted to value "his capital investment for purposes of depletion at the date of discovery rather than at its original cost." *Palmer* v. *Bender*, 287 U. S. 551.

In computing the earnings and profits of a corporation available for distribution as dividends, its assets are generally included at cost, less depletion or depreciation. Appreciation in the value of such assets at the time of the computation is not taken into consideration. In *LaBelle Iron Works* v. *United States*, 256 U. S. 377, the Supreme Court said:

* * * There is a logical incongruity in entering upon the books of a corporation as the capital value of property acquired for permanent employment in its business and still retained for that purpose, a sum corresponding not to its cost but to what probably might be realized by sale in the market. It is not merely that the market value has not been realized or tested by sale made, but that sale cannot be made without abandoning the very purpose for which the property is held, involving a withdrawal from business so far as that particular property is concerned. * * *

It has been stipulated that the discovery value of $501,572 was in excess of cost, if any. As no cost has been shown, we interpret this to mean that the entire discovery value exceeded cost and represented unrealized appreciation in the value of the property resulting from the discovery of the Warner mine. To include this unrealized appreciation in the value of the property in the computation of earnings and profits, as the respondent has done, and at the same time disregard the unrealized appreciation in the value of other assets, would be inconsistent and would result in an erroneous computation of the corporation's earnings and profits to the extent that the discovery value exceeded cost.

The sole purpose of the legislation authorizing the determination of a discovery value in the case of mines was to grant taxpayers an extraordinary basis for computing the depletion deduction; but its significance ends in the deduction section of the statute, *S. T. Hunt,* 4 B. T. A. 1077, and the respondent erred in including it as part of the earned surplus of the corporation as he has done here. Cf. *Chapman* v. *Anderson*, 11 Fed. Supp. 913; *Margaret P. Daly*, 32 B. T. A. 965.

The second question is the treatment to be accorded that portion of the earnings which both parties have treated as being in a deple-

tion reserve based upon the discovery value of the Warner mine when distributed to these petitioners. In *Charles F. Ayer*, 12 B. T. A. 284, this Board, in discussing the difference between a depletion allowance based upon cost or March 1, 1913, value and a depletion allowance based upon discovery value, said:

* * * A depletion allowance based upon the cost or March 1, 1913, value of a natural resource which is being removed and used up represents a return to the owner thereof of parts of the actual cost or March 1, 1913, value of the property. But inasmuch as the total of these allowances can never exceed the cost or March 1, 1913, value of the property, the return of these amounts can never represent a profit to the owner. A depletion allowance based upon so-called discovery value * * * permits the corporate owner of the natural resource to have returned to it untaxed a portion of its gross income greater in amount than the basis for gain on the sale or other disposition of the property, and the Commissioner has held that this excess is earnings or profits accumulated since February 28, 1913, subject to tax as dividends when distributed to the stockholders. It represents earnings or profits of the corporation accumulated after February 28, 1913, which were realized from an increase in value accrued since March 1, 1913.

*       *       *       *       *       *       *

* * * The fact that the statute permits a corporation to deduct from its gross income an amount in excess of the basis for gain on the sale or other disposition of its property, which excess represents a profit to the corporation, does not change the fact that such profit has been realized, * * *

The *Ayer* case was decided under the Revenue Act of 1921. In the decision it was pointed out that, while under the provisions there under consideration taxable dividend distributions might be made from depletion reserves based upon discovery value, a change was made in the 1924 Act, (sec. 201 (d)) which rendered distributions from such reserves not taxable to the stockholders as ordinary dividends. The 1924, 1926, and 1928 Acts provided, in effect, that any distribution made from a depletion reserve based upon the discovery value of a mine should be applied against and reduce the basis of the stock, and if in excess of such basis, that such excess should be taxable in the same manner as a gain from the sale or exchange of property. (See section 201 (d), Revenue Acts of 1924 and 1926, section 115 (d), Revenue Act of 1928.)

The 1928 Act is applicable to the distributions made in 1929 and 1930. In 1929 the Hemlock River Mining Co. had earnings of $147,880.44. Of these earnings $68,662.40 were proper additions to a depletion reserve account based on the discovery value of the Warner mine. The remaining earnings of $79,218.04 could have been distributed to the stockholders as dividends were it not for the fact that on December 31, 1928, the Hemlock River Mining Co. had an operating deficit which, computed in accordance with the decision of the Supreme Court in *Helvering* v. *Canfield*, 291 U. S. 163, amounted to $69,309.24. It is now well settled that an operating

deficit must be made good out of accumulated earnings before taxable dividends can be declared. *Hadden* v. *Commissioner*, 49 Fed. (2d) 709; *Louise Glassell Shorb*, 22 B. T. A. 644; *Arthur C. Stifel*, 29 B. T. A. 1145.

After restoring the deficit existing on December 31, 1928, the accumulated earnings available for distribution as dividends on December 31, 1929, amounted to $9,908.80. It is our conclusion, therefore, that $9,908.80 of the $200,000 distribution made by the Hemlock River Mining Co., on December 31, 1929, represented accumulated earnings taxable as dividends when received by its stockholders. The balance of the distribution had to come either from the gross receipts from the Warner mine which had been set aside in its depletion reserve based upon discovery value, or from capital. In either case the proportionate part thereof, received by these petitioners, is exempt from tax, as it did not exceed the basis of their stock. (Sec. 115 (d), *supra*.)

Before considering the distribution made by the Hemlock River Mining Co. in 1930, we desire to refer briefly to the treatment given to depletion sustained or allowable in the computations made, both by petitioners and by respondent. They treat such depletion as decreasing the amount of the accumulated earnings and profits available for distribution as taxable dividends. This could only be done on the theory that it was set aside by the corporation in a depletion reserve, as otherwise it would not decrease the amount of surplus available for dividends. But petitioners are in error in treating the depletion added to the reserve in each year as increasing the amount of any deficit which the corporation might have had at that time. Any gross receipts of the Warner mine set aside in the depletion reserve were in excess of cost and were profits of the corporation. They represented realized appreciation in the value of property. Placing them in a depletion reserve account did not change their character as profits nor affect the corporation's deficit. *Margaret P. Daly*, *supra*. How, then, should the distribution of $120,000 in 1930, be treated?

We have determined that the Hemlock River Mining Co. had no operating deficit at the end of 1929. Its earnings during the year 1930 amounted to $160,581.75. It sustained and was allowed $67,322.80 as depletion. We hold that this amount could be, and properly was, placed in its depletion reserve account. It therefore had earnings available for distribution during the year 1930 amounting to $93,258.95. Ninety-one thousand two hundred fourteen dollars and ninety-one cents of such earnings was available for distribution on December 24, 1930, and was included in the distribution made on that date. It is, as found by respondent, 76.0125 percent of the total

distribution and the pro rata portion thereof received by these petitioners' is taxable to them as a dividend under section 115 (a) of the Revenue Act of 1928, *supra*. The balance of such distribution came from the depletion reserve based upon discovery value or from capital, and as it did not exceed the basis of petitioners' stock, is not taxable (sec. 115 (d)).

An issue relating to the deduction of contributions was settled by stipulation of the parties filed at the hearing. It will be given effect upon settlement under Rule 50.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

