M. JACKSON CRISPIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60817.   Promulgated February 26, 1935.

*Theodore L. Harrison, Esq.*, for the petitioner.
*Ralph E. Smith, Esq.*, for the respondent.

OPINION.

LEECH: Our present inquiry is limited to the propriety of the respondent's action in treating the sum of $388,637.85, actually received by petitioner from the corporation during the taxable year in excess of his then advances to the corporation, as dividends therefrom, and taxing it as such.

The authority for this action, if any exists, is contained in the Revenue Act of 1928, section 115 (a).[1]

The respondent's determination necessarily rests upon the fact that the corporation had sufficient "earnings or profits accumulated after February 28, 1913," to cover its questioned distributions when made to petitioner. This fact is not denied. Petitioner attacks that determination only upon the ground that the distributions supporting it were loans and not dividends.

The question presented is entirely one of fact. Petitioner has the burden of showing by evidence that the disputed distributions of the corporation from its earnings or profits accumulated since February 28, 1913, were loans and not taxable dividends within the quoted statute. It is argued for petitioner that the course of dealing between him and the corporation, evidenced by the manner in which their respective advances and withdrawals were recorded on the books of the company, particularly the advance by petitioner to the corporation of $196,027.79 in 1930, and the charge to petitioner's open account of the premiums and advance interest on the loan on the policies of insurance taken out by petitioner in favor of the corporation, shows that the petitioner's credit balance with the corporation in his open account with it, as of December 31, 1929, and actually received from the corporation during that year, was a loan by the corporation to him, and not a dividend.

We are interested here directly in the taxable status of a particular receipt of money by petitioner from a corporation. That

[1] SEC. 115. (a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

course of dealing, however reasonably proximate in time and circumstances to the receipt of the questioned money, is not the subject of our inquiry. It may be some evidence of the taxable character of the money in question. But it is not conclusive.

Whatever the weight of such evidence is in other circumstances, we think it is largely minimized here. Petitioner owned *all* the stock in the corporation. He did not move for a continuance of the hearing herein. Nor did he testify. The testimony indicates this was because of alleged financial difficulties preventing his return from his present European residence. However, there was a proper method for the introduction of his testimony under such circumstances. Rule 47, United States Board of Tax Appeals Rules of Practice. No such testimony appears in the record, nor was it offered.

Of course the sole ownership of the corporation stock by petitioner did not obscure that corporate identity. *Planters Cotton Oil Co.* v. *Hopkins,* 286 U. S. 332. True also, from the incorporation of petitioner's company, at least until sometime in 1930, there was carried on the books of that corporation an open account with petitioner in which his advances and withdrawals were debited and credited. But, such book entries are never more than evidentiary. *Doyle* v. *Mitchell Brothers Co.,* 247 U. S. 179. Their weight is diminished, if not entirely lost here. They stand alone, uncorroborated. And not only so, but, from the testimony of the secretary of the corporation under whose direction the books were kept, these accounts between petitioner and corporation are not disclosed to have reflected any other than the secretary's own personal idea of the actual character of the present disputed transactions there recorded.

Against any weight which these book entries, and the unexplained insurance of the petitioner, for the benefit of the corporation, the assignment thereto of petitioner's interest therein, may have, the record discloses facts and circumstances of impressive, and, we think, controlling significance.

The corporation, in which petitioner owned all the stock, had a capital of only $500. Any additional moneys or credit it needed, petitioner furnished. Likewise, funds were withdrawn by petitioner, apparently, when available, and he desired them. But its business was that of buying and selling securities—*not loaning money.* See *First National Bank in Wichita* v. *Commissioner,* 57 Fed. (2d) 7, affirming 19 B. T. A. 744; certiorari denied, 287 U. S. 636; *Bank of California, National Association,* 30 B. T. A. 556. In fact this record indicates no corporate authority to loan even to petitioner. No notes or other evidence of indebtedness covering the transactions

between petitioner and the corporation were ever executed by either petitioner or the corporation. No interest was charged or paid. The fact that no dividends were formally declared is not necessary here to characterize the disputed receipts as dividends. *Christopher* v. *Burnet*, 55 Fed. (2d) 527, affirming 13 B. T. A. 729.

That case involved the same question we have here. The facts were substantially similar, except for the presence here of the policies of insurance and their assignment, the treatment on the corporation's books of the premiums and loans thereon, and the payment by petitioner to the corporation in 1930. In our judgment, these circumstances do not justify a different conclusion in this case.

Any pertinent inferences to be drawn from the transactions connected with the insurance policies, depend upon the circumstances surrounding these transactions. Except for the bare facts of the issuance of such insurance, its assignment, and the corporation's loans thereon, all of little, if any, probative value alone, the books are the only evidence of the character of those transactions as well as the advances of petitioner to the corporation in 1930. These book entries, under the circumstances disclosed, are of no more weight in resolving the present issue upon these additional facts, than they had in reflecting the other transactions.

If petitioner's withdrawals from the corporation in 1929 to the extent of his credit balance were dividends, then his advances in 1930 were not payments upon nor security for loans. It is thus not inconsistent, as petitioner contends, to say that petitioner's advances to the corporation in 1930 were loans to the corporation.

The cases cited by petitioner are distinguishable from the pending case upon their facts, converse presumptions or testimony corroborating book entries. They are not controlling here.

The respondent has determined that the payment of $388,637.85 in 1929 by Crispin Investing Co., a corporation having a capital of $500, to petitioner, its sole stockholder, which amount was in excess of petitioner's advances to the corporation, was a dividend and taxable as such. Revenue Act of 1928, sec. 115 (a). In the face of the present record and the presumption of correctness attaching to respondent's action, that determination will not be disturbed. Cf. *E. T. Schuler*, 29 B. T. A. 415; *Lincoln National Bank, Executor*, 23 B. T. A. 1304; affd., 63 Fed. (2d) 131; *C. W. Murchison*, 32 B. T. A. 32; *Sam Weisberger*, 29 B. T. A. 83.

Reviewed by the Board.

*Judgment will be entered for the respondent.*