*Decision will be entered under Rule 50.*

PEMBROKE REALTY & SECURITIES CORPORATION (IN LIQUIDATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARTHUR M. LOEW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CITY BANK FARMERS TRUST COMPANY, TRUSTEE UNDER A CERTAIN TRUST CREATED IN FAVOR OF A. M. LOEW, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CITY BANK FARMERS TRUST COMPANY, TRUSTEE UNDER A CERTAIN TRUST CREATED IN FAVOR OF JANE C. LOEW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94218, 95837, 95838, 95839.   Promulgated July 12, 1940.

*Maurice Henry Blinken, Esq.*, for the petitioners.

*DeWitt M. Evans, Esq., J. M. Morawski, Esq., E. O. Hanson, Esq.*, and *Harold D. Thomas, Esq.*, for the respondent.

342

346

OPINION.

OPPER: The corporate petitioner is a personal holding company within the meaning of section 351 of the Revenue Act of 1934. It has claimed deductions from its "adjusted net income" under that section on account of certain amounts assertedly distributed as dividends,[1] and for others as being "used or set aside to retire indebtedness incurred prior to January 1, 1934."[2] In this proceeding it contests the disallowance of these deductions.

It appears that the distributions to the corporation's stockholders are not "dividends" within the meaning of the applicable section for two reasons. There were no accumulated earnings or profits. *Foley Securities Corporation*, 38 B. T. A. 1036; affd., 106 Fed. (2d) 731 (C. C. A., 8th Cir.). And the distributions were in liquidation. *Gaston & Co.*, 39 B. T. A. 640. Petitioners seek to distinguish the corporation's position from the circumstances there appearing on the ground that, since distribution of its assets was complete, it had no "undistributed net income." But we think this contention results from a misapprehension of the purport of the provision. Income is "distributed" for the purpose of section 351 only to the extent that it falls within the exceptions there defined. And it is clear that the reference to "dividends" as one of such exceptions does not reach the corporate petitioner's distribution. Neither the plain language of the section nor its fundamental design to tax income to the corporation if its shareholders escape tax, permit the acceptance of petitioners' contention. *Foley Securities Corporation, supra; Gaston & Co., supra.*

The "indebtedness" for the payment of which credit is claimed was in each case a running account having its inception long before the beginning of 1934. But respondent contends that the amount remaining unpaid in the tax year was contracted subsequent to the

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.
  \*     \*     \*     \*     \*     \*     \*
  (b) DEFINITIONS.—As used in this title—
  \*     \*     \*     \*     \*     \*     \*
  (2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of:
  \*     \*     \*     \*     \*     \*     \*
  (B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness; and
  (C) Dividends paid during the taxable year.
  \*     \*     \*     \*     \*     \*     \*

[2] See footnote 1, *supra*.

significant date, and therefore is not such "indebtedness" as the statute describes.

It seems reasonable to assume that Congress intended the reference to indebtedness to designate debts which under applicable law would be so regarded as between debtor and creditor. See *Haffenreffer Brewing Co.*, 41 B. T. A. 443. Similarly, we may assume that "indebtedness incurred prior to January 1, 1934" was intended to refer to debts which, under the local law governing the relations of debtor and creditor, would be treated as having been incurred prior to that date. See *Freuler* v. *Helvering*, 291 U. S. 35.

In the courts of New York, as well as under the common law generally, it is the settled rule that on running accounts payments will ordinarily be applied to the earliest indebtedness "so that the credits are to be deemed payments *pro tanto* of the debts antecedently due." *United States* v. *Kirkpatrick*, 22 U. S. 318, 326; *Carson* v. *Federal Reserve Bank of New York*, 254 N. Y. 218; *In re Stacy, Wolf Hat Co.*, 99 Fed. (2d) 793 (C. C. A., 2d Cir.). There are, of course, exceptions, but "* * * the formula is expressive of a rule that must prevail in the absence of persuasive reasons for qualification or exception." *Carson* v. *Federal Reserve Bank of New York, supra.* And nothing is shown here to suggest that this case would fall within any of such qualifications.

The record shows that in the account of one creditor the balance due on December 31, 1933, was $65,616.98. Prior to October 1, 1935, the beginning of the tax year under consideration, $115,680.73 was repaid. Applying the legal formula just noted, it seems evident that during the tax year no part of the indebtedness incurred prior to 1934 remained unpaid, and hence none could have been "retired." The same applies to the other account, where the balance at the end of 1933 was $55,104.50 and repayments prior to the beginning of the tax year were $107,502.36. The result is that the corporation's claim for a deduction on this ground must also be disallowed.

There is apparently no present dispute between the parties as to the existence or amount of transferee liability imposed upon the remaining petitioners. Accordingly,

*Decision will be entered for the respondent in Docket Nos. 94218, 95838, and 95839, and under Rule 50 in Docket No. 95837.*